The following constitutes the
Memorandum Decision of the Court.
Signed December 7, 2011

_____
Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 10-61392 RLE |
| FLORA NG, | Chapter 7 |
| Debtor. | |
| _____/ | |
| FLORA NG, | Adversary No. 11-4176 |
| | Formerly Adversary No. 10-5378 |
| Plaintiff, | |
| vs. | |
| STERLING PACIFIC LENDING, INC., et al., | |
| Defendants. | |
| _____ | |

**MEMORANDUM DECISION REGARDING MOTION TO DISMISS CERTAIN CAUSES
OF ACTION IN SECOND AMENDED COMPLAINT**

This matter is before the court on the motion to dismiss filed by the above-captioned defendants. The matter has been fully briefed

*H/oakland orders/11-4176. Ng Memo Decis.*                                                    1

and is appropriate for decision without oral argument.

Flora Ng's ("Ng") second amended complaint alleges that defendants' February 2008 foreclosure sales on four pieces of commercial real property were void and that defendants failed to rescind the sales until August 2008. From this predicate, Ng's second amended complaint states twelve causes of action under various theories and defendants now seek dismissal of certain of these causes of action.

For the reasons explained below, the court does not dismiss any of the causes of action and instead remands this entire adversary proceeding to the Superior Court in Santa Cruz County where it began in March 2008.

**I. Background**

    **A. Flora Ng's First Case: Ch. 11 Case No. 05-59533[1]**

1. On December 1, 2005, Ng filed chapter 11 case no. 05-59533 in the San Jose division of this court (the "2005 Case"). Ng stated this case was filed on an emergency basis to stop foreclosure sales on two pieces of real property in San Francisco, California. See docket no. 12, Motion to Approve Post-Petition Financing, p. 1.

2. On December 15, 2005, Ng filed a motion to approve post-petition financing on a secured basis as to four pieces of real property (referred to as "Hyde, Marina, Lombard, and Hecker Pass" or the "Four Properties").[2] Ng claimed she could easily afford the

---

[1] References to docket numbers in each section are to the docket in the main case and adversary proceedings identified in that section unless otherwise noted.

[2] Ng identified several other pieces of real property in the 2005 case which have never been listed on the schedules in any of her subsequent cases, to the extent schedules were filed in those cases.

financial obligations of the proposed new loans and attached documents claimed to support the values of, and the alleged rental income from, the Four Properties. See docket no. 12, Motion to Approve Borrowing and supporting exhibits.

3. Pursuant to the December 20, 2005 Order Authorizing Post-Petition Financing of Real Property, defendants Sterling Pacific Lending, Inc. and its affiliate Generation Leasing, LLC, loaned approximately $4.5 million to Ng secured by deeds of trust on the Hyde, Marina, Lombard, and Hecker Pass properties (Sterling Pacific Lending, Inc. and its related entities, collectively, "Sterling"). See docket no. 25, Order Authorizing Post-Petition Financing of Real Property.

4. On January 11, 2006, based on Ng's representation that there were no unsecured creditors, the court granted Ng's request to dismiss the 2005 Case. See docket no. 40, Order Dismissing Chapter 11 Case.

**B. Events between January 2006 and February 2008**

5. In 2007, Ng defaulted under the Sterling loan documents and Sterling began the process of foreclosing on the Four Properties. See docket no. 68, p. 3, Dec. Joshua Fischer in the Saldana Case described below.

6. According to Ng, in September 2007, Ng entered into an arrangement with an individual named Armando Saldana pursuant to which he was to provide Ng with "assistance in saving my properties." See docket no. 79, p. 2, Dec. Ng in the Saldana Case described below. In connection with this arrangement, Ng then agreed to transfer a 1% interest in each of the Four Properties to Armando Saldana as explained below.

**C. Armando Saldana's Case: Ch. 13 Case No. 08-50672**

7. On February 15, 2008, Armando Saldana filed chapter 13 case no. 08-50672 in the San Jose division of this court (the "Saldana Case"). On his schedule A, Saldana listed a 1% ownership interest in each of the Four Properties. See docket no. 17, p. 10-12, Schedule A.

8. Grant deeds transferring these 1% interests from Ng to Saldana were executed by Ng on February 15, 2008. See docket no. 67, Dec. Debra Berg.[3] They were apparently never recorded. Saldana contacted Sterling on the morning of its scheduled foreclosure sales to tell Sterling he had filed his bankruptcy case and Sterling should not proceed with its foreclosure sales.

9. On February 19, 2008, Sterling conducted non-judicial foreclosure sales on the Four Properties and Sterling affiliate Yosemite Management Group acquired title by trustee's deeds upon sale recorded in the appropriate county recorders' offices. See docket no. 68, p. 3-4, Dec. Joshua Fischer.[4]

10. On March 4, 2008, Ng filed a complaint for damages, to set aside trustee's sales, for declaratory relief and other causes of action against Sterling in the Santa Cruz County Superior Court, designated as case no. cv-159630 (the "Santa Cruz Action").

---

[3] The grant deeds are dated February 15, 2008. It is unclear why the parties waited until February 15, 2008 to execute the grant deeds when their deal was made in September 2007. Sterling suggests it was solely to interfere with its foreclosure rights. Saldana admits he knew of the February 19 sale dates. Ng admits she was contemplating filing her own bankruptcy case at this point, and admits she was relying on the fact that Saldana's filing would create a stay which would benefit her in her negotiations with Sterling. See AP 08-5088, docket no. 2-1, Ng's Opposition to TRO in Santa Cruz Action and Saldana Declaration filed with it.

[4] Sterling contends it was negotiating with Ng on February 19, 2008 and she did not disclose that she had transferred 1% interests to Saldana or that he had filed bankruptcy on February 15, 2008.

11. On April 2, 2008, Ng filed an Amended Notice of Removal of State Court Action through which she removed the first four causes of action in the Santa Cruz Action to the San Jose division of this court pursuant to 28 U.S.C. §1452 where it was designated as adversary proceeding no. 08-5088 in the Saldana Case. See docket no. 2, Amended Notice of Removal.

12. On May 28, 2008, Sterling filed a motion for relief from stay pursuant to Bankruptcy Code §362(d)(1) and §362(d)(4). See docket nos. 53-57, 60-75, 86-88. Sterling requested an order validating the February 19 foreclosure sales through retroactive annulment of the automatic stay. Saldana filed opposition to the motion. Ng also filed opposition but the court ruled she had no standing to oppose the motion. See docket nos. 77-80 and 82-83. Following a hearing on June 25, 2008, the court granted relief from stay on a prospective basis only. See docket no. 107, July 15, 2008 Order Granting Relief from Stay.

13. In early August 2008, Sterling set aside the trustee's deeds recorded after the February 19, 2008 foreclosure sales and re-noticed its foreclosure sales for August 27, 2008. See docket no. 57 in AP 11-4176, the SAC, paragraph 53-54.

14. On September 25, 2008, the court dismissed the Saldana Case. See docket no. 124.

**D. Flora Ng's Second Case: Ch. 11 Case No. 08-54744**

15. Apparently to stop the foreclosure sales set for August 27, on August 26, 2008, Ng filed chapter 11 case no. 08-54744 in the San Jose division of this court.

16. On September 11, 2008, Sterling filed a notice of removal as to the Santa Cruz Action to the San Jose division of this court where

it was designated as adversary proceeding no. 08-5268 in what was then Ng's chapter 11 case. The operative pleading at that point was Ng's First Amended Complaint filed August 18, 2008 ("FAC"). See docket no. 1, ex. D, First Amended Complaint.[5]

17. On September 12, 2008, Sterling filed a motion for relief from stay under Bankruptcy Code §362(d)(1) and §362(d)(4) as to all Four Properties. See docket nos. 19-20. Ng filed opposition.[6] See docket nos. 26-30, 64-65. The preliminary hearing was continued from October 1, 2008 to November 19, 2008 and again continued to December 3, 2008 and again continued to December 10, 2008. The motions were ultimately set for trial to be held on January 23, and January 30, 2009. See docket nos. 70-73.

18. On October 29, 2008, the court converted Ng's ch. 11 case to one under ch. 7 for, among other reasons, her failure to comply with the terms of the court's order to show cause issued on September 17, 2008. See docket nos. 22 and 42.

19. On January 14, 2009, the chapter 7 trustee of Ng's estate filed a notice of settlement with Ng and Sterling regarding the relief from stay motions as to the Four Properties. See docket nos. 84, 87-90 and docket nos. 98-101, 107-108. The stipulations allowed the stay to

---

[5] The causes of action in the FAC were: 1. Damages caused by unlawful foreclosure; 2. Declaratory relief re unlawful foreclosure; 3. Usury; 4. Money had and received; 5. Injunctive relief; 6. Unfair competition; 7. Forcible entry; 8. Conversion; 9. Common counts; 10. Conversion; 11. Forcible entry; 12. Conversion; 13. Common counts; 14. Intentional interference with economic relations; 15. Negligent interference with economic relations. See docket no. 1-9, exhibit D - FAC.

[6] Ng's opposition to this motion says, with a one-day exception as to the Hecker Pass property, she remained in possession of the Four Properties after the February 19, 2008 foreclosure sales. See docket no. 26, p. 4.

remain in effect for a certain period of time after which Sterling was permitted to foreclose on all Four Properties.[7]

20. On March 17, 2010, the court granted Ng's motion to dismiss the chapter 7 case. See docket no. 152. (Dismissal was conditioned on payment of all unsecured creditors and administrative expenses.)

**E. Disposition of Adversary Proceeding Nos. 08-5088 and 08-5268**

21. On February 26, 2009, the court dismissed adversary proceeding no. 08-5088 (pending in the Saldana Case) based on Ng's failure to appear at a status conference. At the request of the chapter 7 trustee in case no. 08-54744, in June 2009, the court vacated the dismissal and reopened the adversary proceeding.

22. At Ng's request, by order entered on May 3, 2010, the court remanded adversary proceeding no. 08-5088 to the Santa Cruz County Superior Court. See docket no. 31.

23. On February 26, 2009, the court also dismissed adversary proceeding no. 08-5268 (pending in the Ng case) for lack of prosecution. See docket no. 19. At the request of the chapter 7 trustee, in June 2009, the court vacated the dismissal and reopened the adversary proceeding. See docket nos. 25, 28.

24. At Ng's request, by order entered on May 3, 2010, the court remanded adversary proceeding no. 08-5268 to the Santa Cruz County Superior Court. See docket no. 34.

25. On June 26, 2009, the chapter 7 trustee filed a notice of intent to abandon the estate's interest in adversary proceeding nos. 08-5088 and 08-5268 and any claims regarding the foreclosures on the Marina, Lombard and Hyde Properties but no order was ever entered on

---

[7] Sterling foreclosed on three of the Four Properties by April 2009 and on the fourth by February 2010.

Case: 11-04176  Doc# 82  Filed: 12/08/11  Entered: 12/08/11 09:34:46  Page 7 of 19

this. See docket no. 126, Trustee's Notice of Intent to Abandon Real Property and Certain Related Litigation Claims in no. 08-54744.

**F. Flora Ng's Third Case: Ch. 7 Case No. 10-61392**

26. On November 1, 2010, Ng filed chapter 7 case no. 10-61392 in the San Jose division of this court.

27. On November 4, 2010, Sterling once again filed a notice of removal of the Santa Cruz Action to the San Jose division of this court where it was designated as adversary proceeding no. 10-5378. See docket no. 1, ex. D, the FAC. In support of its notice of removal, Sterling asserted that issues raised in the Santa Cruz Action arose out of the bankruptcy court's orders on the stipulations granting relief from stay in Ng's second case. See docket no. 1, p. 5.

28. On February 2, 2011, the court dismissed this chapter 7 case because Ng failed to comply with the court's scheduling order for filing missing documents. See docket no. 21.[8]

29. On February 16, 2011, Sterling filed a motion to dismiss certain claims in the FAC. See docket nos. 10-14.

30. Following a case management conference held on March 4, 2011, effective June 3, 2011, the San Jose division of this court transferred adversary proceeding no. 10-5378 to the Oakland division and it was re-designated as adversary proceeding no. 11-4176. See docket no. 26.

31. On June 28, 2011, Sterling re-filed its motion to dismiss certain causes of action in the FAC. See docket nos. 37-42. Ng filed opposition. See docket nos. 43-46.

---

[8] On March 11, 2011, Ng filed a fourth case – chapter 7 case no. 11-52289 in the San Jose division of this court. This case was dismissed on June 6, 2011 for Ng's failure to submit a copy of her federal tax return. See docket no. 26 in that case.

32. Following a hearing on July 28, 2011, the court dismissed the fifth cause of action (injunctive relief) without leave to amend and dismissed the first, second, sixth, fourteenth and fifteenth causes of action with leave to amend. See docket no. 53.

33. On September 6, 2011, Ng filed a second amended complaint (the "SAC"). See docket no. 57.[9] The SAC alleges, in essence, that due to Sterling's failure to rescind the unlawful foreclosure sales for approximately six months, Ng lost the opportunity to refinance her defaulted loans, lost income from the Lombard and Hecker Pass Properties and lost the existing equity in the Four Properties. She asks for compensatory damages of $7 million, emotional distress damages of $1 million and exemplary damages.

**II. Sterling' Motion to Dismiss the Second Amended Complaint**

34. On September 26, 2011, Sterling filed a motion to dismiss as to the first, second, third, eleventh and twelfth causes of action of the SAC based on Fed. R. Civ. P. 12(b)(6) and 12(b)(7) applicable here by Fed. R. Bankr. P. 7012(b)(6) and 7012(b)(7). See docket no. 62-71.

35. Sterling argues that the first cause of action (damages for unlawful foreclosure) again fails to state a claim for relief because, as a matter of Ninth Circuit law, Ng does not have standing to recover damages for Sterling's foreclosure sales

---

[9] The relevant causes of action stated in the SAC are: 1. Damages caused by unlawful foreclosure; 2. Usury; 3. Unfair competition; 11. Intentional interference with economic relations; 12. Negligent interference with economic relations. The other causes of action deal with forcible entry, conversion, and common counts. See docket no. 57.

H:/oakland_orders/11-4176_Ng.Memo.Decis. 9
Case: 11-04176  Doc# 82  Filed: 12/08/11  Entered: 12/08/11 09:34:46  Page 9 of 19

conducted in violation of the automatic stay in the Saldana Case.[10] Sterling also argues that the third, eleventh and twelfth causes of action must be dismissed for the same reasons - each is premised on a stay violation about which Ng lacks standing to complain. (The third cause of action is not premised on a stay violation - it is based on the allegation that Sterling charged usurious interest because it was not properly licensed and engaged in predatory lending in making the 2005 loans to Ng; it is based on California's unfair competition law. The second cause of action for usury is also attacked by Sterling. This court does not rule on this issue for the reasons discussed below.)

36. The eleventh and twelfth causes of action allege that "at all times" Washington Mutual and Aurora Home Loans - lenders with the first priority deeds of trust on the Marina and Hyde properties - were willing to enter into forbearance agreements with Ng and individuals named Simon Wong and Allen Wong were willing to loan Ng money to cure the existing defaults on the Four Properties but by "unlawfully foreclosing" and "failing to reconvey" for six months, Sterling prevented these transactions.

37. In opposition, Ng reiterates her argument that she was a creditor (or a potential creditor) in the Saldana Case. She also argues that the allegations in the SAC are that the foreclosures in 2008 were "unfair" under California law. However, she also persists in her argument that she is an "individual" and so may seek damages under Bankruptcy Code §362(k).

---

[10] Sterling also argues the first cause of action should be dismissed under Fed. R. Civ. P. 12(b)(7) because indispensable parties have not been joined. Any joinder issues may be resolved elsewhere.

**III. Discussion**

    **A. Standard for Motion to Dismiss**

Fed. R. Civ. P. 12(b)(6), applicable here by Fed. R. Bankr. P. 7012(b)(6), provides that a defendant may move to dismiss for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim; in order to survive a motion to dismiss, a plaintiff must allege enough facts to state a claim for relief that is "plausible on its face." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570 (2007).

Sterling does not move to dismiss under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction). Instead, Sterling contends that Ng lacks standing to bring the causes of action that depend on violation of the Saldana stay as the underlying flaw in the February 2008 foreclosure sales. If Ng lacks standing to bring any of her causes of action, the court does not have subject matter jurisdiction and dismissal is appropriate. <u>Warren v. Fox Family Worldwide, Inc</u>., 328 F. 3d 1136 (9th Cir. 2003).

Fed. R. Civ. P. 12(h)(3) provides that if the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action. As a consequence, it is appropriate to address the question of standing in deciding this motion to dismiss. Ng needs to show that the facts alleged, if proved, would confer standing upon her to seek damages for a violation of the automatic stay. According to Sterling, this is an impossibility under controlling Ninth Circuit law as to the first, third, eleventh and twelfth causes of action.

    **B. Ng Lacks Standing for Damages for Automatic Stay Violation**

The original complaint filed in March 2008, alleged that the

stay violation was a "criminal contempt of court." See AP no. 08-5088, docket no. 1-1, ¶32, ¶37, ¶39, ¶40. The FAC filed in August 2008 was revised to reflect that Sterling had by then rescinded the void deeds but used this same language, describing defendants actions as a violation of the criminal law entitling Ng to punitive damages and as a contempt of court. See AP no. 08-5268, docket no. 9, ¶41, ¶43. The SAC repeats this "contempt" language and describes the February 2008 foreclosure sales as "void." It now alleges that the stay violation was a "criminal contempt of court, a violation of federal bankruptcy law, unfair business practices ... and a material irregularity and unfairness under California law applicable to ... private foreclosure procedures." See AP no. 11-4176, docket no. 57, ¶43, ¶47, ¶48.

Despite the court's prior rulings on this issue, Ng persists in framing her allegations as a stay violation. Paragraphs 49-55 of the SAC allege that removal of the Four Properties from the Saldana estate damaged her, that her interest in the Four Properties was protected by the automatic stay and she is proceeding under "both or either federal and state law."

Bankruptcy Code §362(k) provides in relevant part: "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

As the court has previously ruled, Ng does not have standing to seek damages for Sterling's violation of the automatic stay in the Saldana Case whether she was a creditor in that case or not. Nor does she have standing as a co-owner of the Four Properties.

The Ninth Circuit has limited standing to assert claims for violation of the stay to individuals Congress designated as beneficiaries of the stay. In re Brooks, 871 F.2d 89, 90 (9th Cir. 1989). Third party co-owners of property at issue in a bankruptcy case lack standing to assert a violation of the automatic stay under Bankruptcy Code §362. In re Globe Investment and Loan Co., 867 F.2d 556, 559-60 (9th Cir. 1989) (holding that co-owners of property did not have standing to pursue violation of automatic stay pursuant to Bankruptcy Code §362). See also, In re Brooks, 79 B.R. 479 (9th Cir. B.A.P. 1987) (if debtor or trustee does not invoke protections of Bankruptcy Code §362, no other party may attack acts in violation of stay); Sanchez v. Torres, 2008 WL 1701900, at *6 (N.D. Cal. April 10, 2008) (owners other than the debtor do not have standing to assert violation of automatic stay); Burcena v. Bank One, 2007 WL 291562, at *5 (D. Hi. Oct. 1, 2007) (same); Yanik v. Countrywide Home Loans, Inc., 2011 WL 223739, at *3 (C.D. Cal. Jan. 21, 2011) (same).

Based on this consistent, binding authority, Ng does not have standing to seek damages for a stay violation that occurred in the context of the Saldana Case. Ng has no cause of action for damages based on that stay violation whether the SAC makes reference to Bankruptcy Code §362(k) or some vague zone of protection created by the existence of an automatic stay in another bankruptcy case.

**C. The Adversary Proceeding Does Not State Claims That Arise under Title 11 or Arise in a Case under Title 11**

A foreclosure sale conducted in violation of the automatic stay is void. In re Schwartz, 954 F.2d 569 (9th Cir. 1992). The first, eleventh and twelfth causes of action appear to seek damages stemming from the alleged failure to immediately rescind the sales

when it was apparent they were void under Schwartz.

This is too weak a link to establish federal jurisdiction. The defect in the foreclosure sales may be based on the Bankruptcy Code - they were void under Schwartz - but the challenged causes of action are based on California law.  Ng may not assert these state law causes of action in this court.

Bankruptcy jurisdiction is governed by 28 U.S.C. §1334.[11] Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, that are referred to it by the district court. 28 U.S.C. §157(b)(1); B.L.R. 5011-1.

Section 157(b)(2) provides a non-exhaustive list of core proceedings. Each of the notices of removal claimed that this litigation was core. For example, see docket no. 1 in 08-5268 in which Sterling states the adversary proceeding is core pursuant to §157(b)(2)(A),(C),(G),(K), and if it was held to be non-core Sterling consented to proceeding in the bankruptcy court. Ng's removal notices were similar.

Core proceedings are those that would not exist outside of bankruptcy. In re Pegasus Gold Corp., 394 F.3d 1189 (9th Cir. 2005). Core proceedings depend on the Bankruptcy Code for their existence and could not proceed in another court. Dunmore v. United States, 358 F.3d 1107, 1114 (9th Cir. 2004). Proceedings are non-core if

---

[11] 28 U.S.C. §1334 (a) provides "Except as provided in subsection (b) of this section, the district courts [and the bankruptcy courts as a unit thereof under §157] shall have original and exclusive jurisdiction of all cases under title 11. (b) ... the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

they do not invoke a substantive right provided by the Bankruptcy Code and do not involve theories that could only arise in a bankruptcy case. Gruntz v. County of L.A., 202 F.3d 1074, 1081 (9th Cir. 2000).

Based on these articulations of whether a matter is core or not, it is obvious that this adversary proceeding is not a core proceeding. Beyond the allegation that the foreclosure sales in February 2008 were void because they were done in violation of the automatic stay in the Saldana Case, the challenged causes of action are premised on California law and do not arise under title 11; resolution of these causes of action does not depend on the Bankruptcy Code and the litigation has obviously proceeded in another court and will be able to do so on remand. Finally, none of the theories alleged in the SAC could only arise in a bankruptcy case. And the court reiterates that Ng does not have standing to seek damages for violation of the automatic stay in the Saldana Case, whether based on the theory that she is an individual seeking damages under Bankruptcy Code §362(k) or based on the theory that Ng is or was a creditor of Saldana or a co-owner of property with Saldana.

At one point, it may have appeared - based on Sterling's suggestion - that certain causes of action in this adversary proceeding may have required this court to interpret the relief from stay order entered in the Saldana Case in July 2008 or the relief from stay orders entered in Ng's second case in January

2009.[12] The court would have had jurisdiction to do that. <u>In re Taylor</u>, 884 F.2d 478, 481 (9th Cir. 1989) (court retained jurisdiction to interpret its orders entered prior to dismissal but not to grant new relief); <u>In re Davis</u>, 177 B.R. 907, 912 (9th Cir. B.A.P. 1995) (court retains jurisdiction for action for damages for stay violation after dismissal); <u>In re Aheong</u>, 276 B.R. 233, 245 (9th Cir. B.A.P. 2002) (court had post-dismissal and post-closing jurisdiction to annul the stay). If that had been the case, this court may have had jurisdiction at least as to the causes of action premised on a stay violation as contempt of court.

This suggestion does not survive close scrutiny[13] and the current formulation of the causes of action in the SAC make it clear that no such basis for jurisdiction exists. Determination of the issues raised in the SAC will not involve interpretation of bankruptcy court orders or interpretation of the parameters of Bankruptcy Code §362.[14] Thus, nothing in the adversary proceeding comes within the scope of this court's arising in or arising under

---

[12] See the final paragraph of each Order on Stipulation for Relief from Automatic Stay as to the Four Properties entered in no. 08-54744 as docket nos. 98-101: "In the event that there are any disputes remaining or any disputes concerning the terms of the stipulation or this order, the parties agree to submit each such issue or issues to this court for resolution." A different paragraph of each stipulation also preserves the right to proceed elsewhere with the action designated as adversary proceeding no. 08-5268.

[13] It may in fact have been disingenuous for Sterling to assert that the court would be called upon to interpret the relief from stay orders entered in Ng's second case since the adversary proceeding was premised on a stay violation in the Saldana Case and the orders in Ng's second case were irrelevant to those claims.

[14] The court may also exercise its discretion to retain jurisdiction over an adversary proceeding after dismissal of a main case in the interest of economy, convenience, fairness, or comity. See <u>In re Carraher</u>, 971 F.2d 327, 328 (9th Cir. 1992). No such interests are apparent here.

jurisdiction.

**D. This Court Does Not Have Related to Jurisdiction**

Under 28 U.S.C. §157(c)(1), a bankruptcy court may hear a proceeding that is not core but that is otherwise related to a case under title 11. In such a proceeding, the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court. If all parties consent, the district court may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine, subject to the right to appeal under 28 USC 158. 28 U.S.C. §157(c)(2). Here, the court does not have related to jurisdiction.

In <u>In re Feitz</u>, 852 F.2d 455 (9th Cir. 1988), the Ninth Circuit adopted the test stated in <u>Pacor v. Higgins</u>, 743 F.2d 984, 994 (3rd Cir. 1984) for determining whether there is related to jurisdiction. There is related to jurisdiction if the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The Ninth Circuit has narrowed this test when the action involves a post-confirmation chapter 11 debtor. <u>In re Ray</u>, 624 F.3d 1124, 1133-34 (9th Cir. 2010); <u>In re Pegasus Gold Corp.</u>, 394 F.3d 1189, 1193-94 (9th Cir. 2005). In that context, there must be a "close nexus" between the action and the bankruptcy case.

While this case is not comparable to a post-confirmation chapter 11 case, it is clear that there is no close nexus between this adversary proceeding and any bankruptcy case. Ng's cases are all closed and the outcome of this dispute will not have any effect on any estate. The outcome of the dispute between Ng and Sterling will not alter any debtor's rights, liabilities, options, or

freedom of action or in any way impact upon the handling and administration of any bankruptcy estate. Accordingly, the court does not have related to jurisdiction.

**IV. Conclusion**

Based on the foregoing, the court now remands this entire adversary proceeding to the Santa Cruz County Superior Court where it shall remain. The court will issue a separate order remanding this adversary proceeding and directing the clerks office to close it.

**\*\* End of Memorandum Decision \*\***

**Court Service List (via ECF only)**

Neil Ison
POB 700622
San Jose, CA 95170
Email: isonlaw@yahoo.com

Don J. Pool
Law Offices of Powell and Pool
7522 N Colonial Ave. #100
Fresno, CA 93711
Email: donp@wtcap.com

H/oakland_orders/11-4176_-_Ng_Memo_Decis.
Case: 11-04176    Doc# 82    Filed: 12/08/11    Entered: 12/08/11 09:34:46    Page 19 of 19

19